*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARIC LYNN HOLLOWAY II,

        Plaintiff-Appellant,

and

JERMELE DIAMOND SWARTZ JR and ERVIN CORDELL-LAMAR TAYLOR,

        Plaintiffs,

and

ADVANCED SURGERY CENTER, LLC,

        Intervening Plaintiff,

v

MEMBERSELECT INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF THE MIDWEST,

        Defendants-Appellees,

and

JOHN/JANE DOE and MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY,

        Defendants.

UNPUBLISHED
May 29, 2025
12:18 PM

No. 367611
Wayne Circuit Court
LC No. 21-007353-NI

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

-1-

Plaintiff-appellant, Aric Lynn Holloway II (plaintiff), appeals as of right an amended stipulated order of dismissal in favor of defendant-appellee, Citizens Insurance Company of the Midwest (defendant). We affirm.

## I. FACTUAL BACKGROUND

This action arises out of a car accident that occurred in December 2020. Plaintiff and two of his friends, co-plaintiffs Jermele Diamond Swartz and Ervin Cordell-Lamar Taylor, were riding in a vehicle driven by Daishanique Parkes. The car behind Parkes exceeded the speed limit and rear-ended Parkes's car. According to plaintiff, the other driver fled the scene on foot without providing identification or insurance information. Plaintiff sought medical care two days later for pain related to the accident. He eventually claimed injuries including "pain in the entire body, . . . not limited to neck, back, shoulder, knees, and hands."

Plaintiff underwent spinal surgery at Advanced Surgery Center (ASC). Plaintiff assigned his right to payment of PIP benefits related to the surgery to ASC. Plaintiff did not have a no-fault insurance policy, and asserted that neither did the motorist who caused the accident that injured him.[1] Plaintiff therefore initially sought coverage for PIP benefits and uninsured-motorist benefits through defendant-appellee, MemberSelect Insurance Company (MemberSelect), which had issued a policy to plaintiff's parents. Plaintiff was uncertain whether coverage through MemberSelect existed, so he also applied for benefits through the Michigan Assigned Claims Plan (MACP), as administered through the Michigan Automobile Insurance Placement Facility (MAIPF).

In the application he submitted to MAIPF, plaintiff claimed that at the time of the accident he resided with his girlfriend and his daughter on Basil Street in Detroit. He maintained that no one in the home owned a motor vehicle. Plaintiff checked a box on the application indicating that he had reviewed the information contained in the application and that it was "true and accurate." Plaintiff also checked a box indicating that he had read the "fraud warning," which provided that an applicant would be ineligible for benefits if they knowingly made a materially false statement. Plaintiff also submitted two attendant-care affidavits indicating that he received attendant-care services every day in February and March 2021. Plaintiff likewise submitted two replacement-services affidavits. Plaintiff indicated that all of the services were provided by Isheena Ritchie. Relevant to this appeal, in both the attendant-care and replacement-services affidavits, plaintiff indicated that he received care every day in February and March 2021, including February 29, 30, and 31—dates that do not exist.

Ultimately, both the MAIPF and MemberSelect refused to service plaintiff's claim for PIP benefits. Plaintiff thereafter filed a complaint seeking payment of no-fault benefits from

---

[1] Plaintiff would not have been able to receive PIP benefits from the negligent driver's insurance carrier even if that motorist had coverage. MCL 500.3114(4), as amended in June 2019, states that a person who is not covered by a no-fault policy "shall claim personal protection benefits under the assigned claims plan . . . ." See 2019 PA 21. Thus, the only remedy now available to uninsured motorists is coverage through the Michigan Assigned Claims Plan (MACP).

MemberSelect, or alternatively, the MAIPF. He also sought uninsured motorist benefits from MemberSelect.

At his deposition, plaintiff testified that he began receiving attendant-care and replacement services after his surgery in mid-March 2021. Plaintiff asserted that he received those services five days a week. He indicated that he had reviewed the affidavits, and understood that by signing them, he was confirming their accuracy. Plaintiff further testified that, at the time of the accident, he lived on Basil Street in Detroit with his parents, his girlfriend, and his daughter. However, plaintiff's mother testified that plaintiff was not living with her and her husband at the time of the accident, and that plaintiff's girlfriend had never lived at her home. Additionally, Ritchie testified she did not know plaintiff and had never provided him attendant-care or replacement services.

ASC moved to intervene as a plaintiff, and the trial court granted the motion. ASC filed a complaint in November 2021, asserting that, as plaintiff's assignee, it was the real party in interest to prosecute the action against the MAIPF and MemberSelect. ASC sought to recover PIP benefits covering the services it provided to plaintiff, for which it had submitted claims, and alleged that MemberSelect and the MAIPF had breached their contractual and statutory duties.

Several months later, in April 2022, the trial court entered a stipulated order dismissing the MAIPF from the suit and substituting defendant Citizens. Additionally, MemberSelect, who is not involved in this appeal, was dismissed from the suit on its motion for summary disposition on the basis that its insured, plaintiff's father, Aric Holloway Sr., had opted out of coverage for medical expenses, i.e., allowable expenses under MCL 500.3107(1)(a).[2] Consequently, plaintiff's and ASC's only remaining avenue for recovery of PIP benefits was defendant.

In June 2022, defendant moved for summary disposition, arguing that plaintiff was ineligible for PIP benefits because he engaged in fraudulent insurance acts in violation of MCL 500.3173a(4). Defendant argued that plaintiff submitted attendant-care and replacement-services affidavits material to his claim for payment of services provided on the nonexistent dates of February 29, 30, and 31 knowing that the information was false. Defendant further pointed out that the attendant-care and replacement-services affidavits sought reimbursement for services provided seven days a week, but that plaintiff testified that he received those services only five days a week. Relatedly, plaintiff claimed that Ritchie provided all of these services, but Ritchie testified that she did not know plaintiff and never provided him any services. Defendant also asserted that, in plaintiff's application for benefits, he claimed that he lived at the Basil Street address with his girlfriend and his daughter and that no resident relative owned a vehicle, when in fact plaintiff's parents lived at that address, not his girlfriend, and both parents owned cars insured

---

[2] The record indicates that MemberSelect was only dismissed with respect to the PIP claims and that a trial was scheduled regarding plaintiff's claims for uninsured motorist benefits. However, the case apparently settled as to MemberSelect and trial was cancelled.

by MemberSelect at the time of the accident—facts that plaintiff at least partially admitted in his deposition.[3]

Plaintiff responded that questions of fact regarding the inconsistencies in his testimony and the conflicts between his testimony and that of Ritchie and his mother precluded summary disposition. Plaintiff asserted that he had not knowingly made a material false statement, and that the nonexistent service dates reported in the affidavits were mere clerical errors. Plaintiff likewise asserted that whether he lived with his parents at the time of the loss was not material because resident relatives are only material to the extent that they provide for an insurer of higher priority, and that no such insurer existed in this case.

In August 2022, the trial court entered an order granting defendant's motion "[b]ased on the alleged service provider deposition and the false dates of service." In October 2023, the trial court dismissed defendant with respect to ASC's claims for its treatment of plaintiff on the basis of the determination that plaintiff had committed insurance fraud.

The lawsuit continued with respect to co-plaintiffs Swartz and Taylor. In August 2023, the trial court entered an "amended stipulation and order for dismissal with prejudice and without costs," which provided that Taylor's and Swartz's claims against defendant were dismissed with prejudice. The order indicated that it was a final order that closed the case. Notably, the caption of the August 2023 order included all of the original parties to the case, but crossed out the names of plaintiff, ASC, MemberSelect, and the MAIPF. Only counsel for defendant and counsel for co-plaintiffs, who was also plaintiff's counsel, signed the order. This appeal followed.[4]

## II. ANALYSIS

### A. JURISDICTION

As a threshold matter, defendant argues that this Court lacks jurisdiction over this appeal because no appeal as of right may be taken from a consent judgment without an express reservation of the right to appeal. We disagree.

We review de novo questions of law, including whether this Court possesses jurisdiction to hear an appeal. *NRDC v Dep't of Environmental Quality*, 300 Mich App 79, 84; 832 NW2d 288 (2013).

---

[3] Due to the sequence of events in this case, we are left with two explanations for plaintiff's actions as it pertains to reporting his address, either of which necessitate a finding that he lied to the MAIPF. If he lived on Basil Street at the time of the accident, then he lied to the MAIPF by alleging that no one in his household had a no-fault policy, because he knew that his parents also lived at the address. At the time, his parents had a policy with Memberselect that did not include coverage for allowable expenses. Alternatively, if he did not live on Basil Street at the time of the accident, then he lied to the MAIPF by falsely alleging that he lived at that address.

[4] Prior to case call, the parties submitted a stipulation to dismiss ASC as a party. ASC does not participate in this appeal.

Under MCR 7.203(A)(1), this Court has "jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] final judgment or final order of the circuit court . . . as defined in MCR 7.202(6)." Thus, to perfect an appeal by right, there must be both a final judgment or order, and the party appealing must be "aggrieved." MCR 7.202(6)(a)(i) defines a final judgment as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties[.]" For a party to be considered "aggrieved," they "must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) (quotation marks and citation omitted). It is not enough for a litigant to be disappointed in the outcome of a case; rather, "[t]o have standing on appeal, a litigant must have suffered a concrete and particularized injury" as a result of the court's ruling. *Id*. Additionally, "[w]here a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins*, 194 Mich App 462, 472; 487 NW2d 807 (1992).

Generally, a litigant may not appeal the merits of a consent judgment[5] because any error therein is that of the parties, not the court. *Dora v Lesinski*, 351 Mich 579, 582; 88 NW2d 592 (1958). Previously, a consent judgment was only appealable by right if a party reserved the right to appeal. See *Travelers Ins v Nouri*, 456 Mich 937; 575 NW2d 561 (1998). This Court most recently applied that principle in *Sandoval v Farmers Insurance Exch*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket Nos. 361166 and 361176). There, the plaintiff was injured in an accident while riding on a shuttle bus at a hospital. *Id*. at ___; slip op at 2. The plaintiff sought PIP benefits through the MACP, which assigned the claim to Farmers Insurance Exchange. *Id*. The plaintiff sued when Farmers refused to pay the claim. Farmers alleged that Zurich was an insurer of higher priority. *Id*. Eventually, both Zurich and the hospital were added to the suit. *Id*. Farmers moved for summary disposition, which the trial court granted on the ground that Zurich was the insurer of highest priority. *Id*. at ___; slip op at 2-3. The suit continued, with Zurich filing a motion for summary disposition as to the plaintiff and her medical providers. *Id*. at ___; slip op at 4. Eventually, the trial court entered a final stipulated order dismissing Zurich and the hospital, and declaring that it resolved the last pending claim and closed the case. *Id*. Both counsel for the plaintiff and counsel for Zurich signed the order, which did not reserve to Zurich any appellate rights. *Id*. Counsel for Farmers did not sign the order. *Id*. Zurich then claimed an appeal of the trial court's earlier order granting summary disposition to Farmers. *Id*.

On appeal, the *Sandoval* Court held that a stipulated order that does not reserve a right to appeal a prior order does not provide a basis to appeal that prior order. *Id*. at ___; slip op at 6. The Court explained that the stipulated order did not reserve Zurich's right to challenge the prior order granting summary disposition to Farmers. *Id*. The Court explained:

> It is certainly true that a party, although appealing from the final order in a case, is free to raise on appeal issues related to other orders in the case. But it is not a

---

[5] "Consent decrees differ from typical judgments because the voluntary nature of a consent decree is its most fundamental characteristic." *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 565; 840 NW2d 375 (2013) (quotation marks and citation omitted).

question whether an appellant is aggrieved by an earlier order; it must still be able to claim an appeal from the final order in order to challenge the earlier order. And it cannot do so if it consented or stipulated to the final order, unless it has reserved the right to do so in its stipulation to the order. And Zurich failed to do so in this case. Accordingly, this Court lacks jurisdiction to hear this appeal. [*Id*. (quotation marks and citations omitted).]

Defendant relies on *Sandoval* on appeal. However, six months after *Sandoval* was issued, this Court issued its opinion in *Jaber v P & P Hospitality, LLC*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 363572) (*Jaber I*). There, this Court opined that *Sandoval* was wrongly decided because "it correlated this Court's jurisdiction to the inclusion of specific language in a lower court order rather than on the court rules governing jurisdiction and it ignored the application of contract principles [applicable to consent judgments]." *Id*. at ___; slip op at 2. After summarizing *Sandoval* and noting that stipulated orders were creatures of contract law, the *Jaber I* panel opined that it was "evident from the case caption, the language of the stipulated order, the attorneys that signed the stipulation, and the language of the trial court's order that Farmers was not a participant in or party to the order of dismissal." *Id*. at ___; slip op at 13. The *Jaber I* panel further explained:

Because Farmers was not a party to the stipulation and order for dismissal, i.e., a binding contract, we would not have imposed a requirement that Zurich expressly include a reservation of rights . . . to pursue the earlier decision granting Farmers' motion for summary disposition. There is no such requirement in contract law that the parties to a contract identify contingencies related to nonparties, and at the time of entry of the order for dismissal, Farmers was no longer a party to or participant in the litigation. Further, there is no requirement in MCR 7.203(A), addressing our jurisdiction, that challenges to orders entered before a final order be preserved by reservation. We would not impose a condition that a reservation of rights or other "magical" language controls our jurisdiction over a case, particularly where it is absent from our court rules and not found in the parties' contractual agreement. [*Id*. at ___; slip op at 13-14 (footnotes omitted).]

The *Jaber I* Court thus disagreed with the *Sandoval* Court's conclusion that an order of dismissal had to include specific language in order to reserve the right to appeal an earlier ruling. *Jaber I*, ___ Mich App at ___; slip op at 14. The *Jaber I* Court reasoned that, based on Farmers' lack of participation in the stipulation to dismiss and order of dismissal, Zurich was still an aggrieved party within the meaning of MCR 7.203(A) and (6)(a)(i). *Id*. The Court further explained that requiring an aggrieved party to include a reservation of the right to appeal in an order of dismissal would permit nonparties "to question the intent of the participating parties and to rewrite the agreement to require a term that the participating parties never included or intended and was not required by MCR 7.203(A)." *Id*. at ___; slip op at 14-15. Thus, the *Jaber I* Court indicated that, but for *Sandoval*, it would apply contract principles to conclude that the plaintiff's appeal did not need to be dismissed for lack of jurisdiction. *Id*. at ___; slip op at 15.

After *Jaber I*, this Court convened a special panel to resolve the conflict between *Sandoval* and *Jaber I*. *Jaber v P & P Hospitality, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572) (*Jaber II*). There, this Court declined to follow *Sandoval* and held that "an

aggrieved party may raise on appeal issues arising from an earlier order relating to one party even if a later, stipulated final order of dismissal as to another party does not contain a reservation of the right to claim an appeal from the earlier order." *Id*. at ___; slip op at 6-12. Given the holding of *Jaber II*, *Sandoval* no longer dictates whether this Court has jurisdiction over plaintiff's appeal. Instead, this Court must follow the rule established in *Jaber II*. MCR 7.215(A).

Applying these principles to the matter at hand, there can be no dispute that plaintiff is an aggrieved party with respect to the August 2022 order, where the trial court ruled that there was no question of fact that plaintiff had committed fraudulent insurance acts, and that he was thus excluded from coverage for PIP benefits. Plaintiff therefore suffered "a concrete and particularized injury" stemming from the court's decision. *Federated Ins*, 475 Mich at 291-292. Therefore, plaintiff was an aggrieved party as to the August 2022 order. However, plaintiff could not appeal by right from the August 2022 order because it was not final. After the court entered its final order in August 2023, plaintiff could then appeal the August 2023 order by right, while also raising issues stemming from the August 2022 order.

Although in some circumstances a party must reserve a right to appeal when a consent judgment is entered, *Jaber II* makes it clear that an appellant may raise "issues arising out of an earlier order relating to one party, even if the appellant has failed to reserve the right to appeal in a subsequent, stipulated order of dismissal as to another party." *Jaber II*, ___ Mich App at ___; slip op at 2. Here, plaintiff is challenging a prior order unrelated to the stipulated August 2023 order. Looking to the language and caption of that stipulated order, and considering that only certain attorneys signed it, plaintiff was not a signatory to the August 2023 order. The language refers to a dismissal as to co-plaintiffs Swartz and Taylor and makes no mention of plaintiff. It also makes clear that plaintiff's counsel, who also represented Swartz and Taylor, signed the order on behalf of only those co-plaintiffs, given that plaintiff's name is crossed out of the caption along with those of the other parties who were no longer involved in the case.

Since plaintiff was not a party to the stipulated order of dismissal, defendant's assertion that plaintiff should have reserved a right to appeal the August 2022 order is inconsistent with the contract principles applicable to consent judgments. See *Jaber II*, ___ Mich App at ___ ; slip op at 9. Moreover, as this Court recognized in *Jaber II*, parties may not stipulate to jurisdiction, and the court rules do not require that challenges to orders entered before a final order be preserved by reservation. *Id*. at ___; slip op at 9-10. For the foregoing reasons, plaintiff was not required to reserve the right to appeal the August 2023 order. Jurisdiction in this Court is therefore proper.

B. FRAUD

Plaintiff argues that the circuit court erroneously granted summary disposition on the basis of fraud under MCL 500.3173a(4). He contends that the errors in his application and his inconsistent deposition testimony were innocent mistakes. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Candler v Farm Bureau Mut Ins*, 321 Mich App 772, 777; 910 NW2d 666 (2017). The trial court did not specify the rule under which it granted summary disposition, but we consider the motion as having been granted under MCR 2.116(C)(10) because the court considered matters outside the pleadings in making its ruling. *Id*. at 776. A motion for summary disposition under

MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *El-Khalil v Oakwood Healthcare*, *Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the parties' documentary evidence "in the light most favorable to the party opposing the motion." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). A motion brought under subrule (C)(10) is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson*, 502 Mich at 761.

Questions of statutory interpretation are also reviewed de novo. *ACLU of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022). When construing statutory language, this Court's primary goal is to discern the Legislature's intent. *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015). The best indicator of that intent is the language used. *Id*. If the language is clear and unambiguous, then it must be applied as written. *Cruz v State Farm Mut Auto Ins*, 466 Mich 588, 594; 648 NW2d 591 (2002).

When a person injured in a motor vehicle accident lacks insurance, the no-fault act sets forth an order of priority for insurers who may be liable for the payment of PIP benefits. See MCL 500.3114; MCL 500.3115. When there is no applicable insurer in the order of priority, the injured person may seek payment of PIP benefits through the MACP. MCL 500.3172(1). However, if the injured person submits a claim to the MACP that is based on a "fraudulent insurance act," the injured person will be ineligible for PIP benefits. MCL 500.3173a(4). This Court has held that a person commits a "fraudulent insurance act" when

> (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Candler*, 321 Mich App at 779-780 (footnote omitted).]

MCL 500.3173a(4) "unambiguously establishes that the only scienter requirement is mere knowledge that the statement contains false information concerning a fact or thing material to the claim . . . ." *Bakeman v Citizens Ins*, 344 Mich App 66, 74; 998 NW2d 743 (2022) (citation omitted). "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 618; 963 NW2d 695 (2020) (quotation marks and citation omitted).

Plaintiff argues that the statements he made in his deposition should not be considered because he made them during the litigation process, meaning that they could not constitute a fraudulent insurance act within the meaning of MCL 500.3173a(4). Plaintiff relies on the holding in *Williamson v AAA of Mich*, 343 Mich App 496, 512-153; 997 NW2d 296 (2022), rev'd 513 Mich 264; 15 NW3d 546 (2024), that "[s]tatements made for the first time during discovery cannot form the basis of a fraudulent insurance act under MCL 500.3173a(4)." But after plaintiff filed his appeal in this matter, our Supreme Court reversed *Williamson*, instead holding that MCL 500.3173a(4) *does* apply to misrepresentations made during discovery in support of a claim

-8-

for no-fault benefits. *Williamson*, 513 Mich at 273-274. The Court reasoned that the term "claim" in MCL 500.3173a(4) refers "generally to a claimant's demand for coverage under the MACP based on bodily injury sustained in a motor vehicle accident," and that interrogatory answers through which the plaintiff sought payment of no-fault PIP benefits were necessarily in support of a demand for such coverage. *Williamson*, 513 Mich at 273-274.

The same reasoning set forth by our Supreme Court in *Williamson* applies here with regard to plaintiff's deposition statements in support of his demand for coverage. The point of plaintiff's suit was to obtain PIP benefits through the MACP and the assigned insurer. His deposition testimony regarding the attendant-care and replacement services he received, as well as his assertions regarding his residency on Basil Street in Detroit, were made in furtherance of this goal. We therefore reject plaintiff's claim that his deposition testimony may not be considered for purposes of assessing whether he committed a fraudulent insurance act under MCL 500.3173a(4).

Viewing the evidentiary record in the light most favorable to plaintiff, we find no genuine issue of material fact that plaintiff committed a fraudulent insurance act. The record indicates that plaintiff was aware that the attendant-care and replacement-services affidavits he submitted were incorrect. Plaintiff claimed in the affidavits that Ritchie provided those services seven days a week for the months of February and March 2021, including the nonexistent dates of February 29, 30, and 31. Setting aside whether the inclusion of these false dates might have been an honest mistake, plaintiff testified in his deposition that Ritchie did not start providing him services until mid-March, after his surgery, and only did so five days a week, contrary to the information provided in his affidavits, in which he claimed he received services from Ritchie seven days a week in February and March. Significantly, plaintiff reviewed the forms before submitting them, and recognized by signing them that he was verifying their accuracy. Thus, plaintiff signed the forms knowing they were false, given his acknowledgment that Ritchie had not provided him services for the month of February, and had provided services only five days a week for the latter half of March.

Additionally, plaintiff asserted in his application to the MAIPF that he lived on Basil Street in Detroit with his girlfriend and daughter, and that no one in the home owned a vehicle. He later attested in his deposition that he lived on Basil Street with his parents, his girlfriend, and his daughter. Further, contrary to the information provided in the application, the record indicates that plaintiff's parents owned and insured two vehicles at the Basil Street address. Plaintiff checked a box on the application indicating that the information contained in the application was "true and accurate." As with his attendant-care affidavits, the record thus supports the conclusion that plaintiff signed the application with the knowledge that he was providing false, inaccurate information.

Plaintiff additionally argues that the inclusion of nonexistent dates was not a basis for the harsh remedy of MCL 500.3173a(4), likening this matter to *Gary v Farmers Ins Exch*, 348 Mich App 138; 17 NW3d 447 (2023). *Gary* is not dispositive. *Gary* involved a plaintiff seeking PIP benefits who suffered severe cognitive deficits as a result of bodily injury sustained in a motor-vehicle accident, whose resulting confusion was reflected on the application for benefits form because he provided conflicting answers to a question. *Id*. at 141, 149-150. There is no evidence that plaintiff suffered from cognitive deficits indicating that he did not knowingly make a false statement, and the forms plaintiff submitted did not obviously reflect a cognitive impairment as was apparent in *Gary*. Absent any evidence demonstrating that plaintiff did not realize the

information in the forms was incorrect due to an impairment or disability caused by the accident, no reasonable jury could conclude that plaintiff did not know that he was submitting false information material to his claim for no-fault benefits. See *Candler*, 321 Mich App at 781-782. Because plaintiff committed a fraudulent insurance act, he was ineligible for PIP benefits through the MACP. MCL 500.3173a(4).

Plaintiff further asserts that summary disposition was improper because a factual dispute existed between plaintiff's deposition testimony and Ritchie's deposition testimony. Plaintiff adds that an unresolved question remains regarding whether he lied about his residence. But even if questions of fact existed about those issues, summary disposition was proper because there was no question of fact that plaintiff knew the information he was submitting in the attendant-care and replacement-services affidavits was false. Plaintiff has failed to demonstrate the existence of a genuine issue of material fact to preclude summary disposition. The trial court thus did not err by granting summary disposition in favor of defendant.

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett